BERTHA A. ROGERS,

                        Plaintiff,

      - versus -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.

MEMORANDUM
AND ORDER
14-CV-5929 (JG)

A P P E A R A N C E S:

    LAW OFFICE OF HARRY J. BINDER AND CHARLES E. BINDER, P.C.
        60 East 42nd Street, Suite 520
        New York, NY 10165
    By:    John J. Moran
        *Attorneys for Plaintiff*

    KELLY T. CURRIE
        Acting United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
    By:    Andrew Johndahl[1]
        James R. Cho
        *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        Bertha Ann Rogers seeks review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration's denial of her application for Social Security Disability benefits. The parties have cross-moved for judgment on the pleadings. Rogers asserts that the Administrative Law Judge ("ALJ") committed various errors in finding her not disabled and seeks a remand to the Acting Commissioner of Social Security (the "Commissioner") for further proceedings. The

---

[1] On consent, law student intern Andrew Johndahl argued the case on behalf of the Commissioner.

Commissioner requests that I affirm her decision. I heard oral argument on April 29, 2015. For the reasons that follow, Rogers's motion is granted and the Commissioner's motion is denied. The case is remanded to the Commissioner for further proceedings consistent with this decision.

BACKGROUND

A. *Facts and Procedural History*

Rogers was born in 1950 and was 60 years old at the onset of her claimed disability, which was June 25, 2010. R. 77.[2] She has a high school education. R. 81. Rogers has worked full-time for nearly twenty years, spending 16 years doing data entry for a bank and then three years as a receptionist. *See* R. 218-21. She stopped working in 2009 because of pains in her back, hip, and chest. R. 82-83.

Rogers applied for social security benefits on September 15, 2012. R. 178-84. After her application was denied (R. 122-29), she requested a hearing before an administrative law judge ("ALJ"). She had a hearing before ALJ Gal Lahat on December 16, 2013. R. 73. The ALJ found that Rogers was not disabled in a decision dated April 25, 2014. R. 45-62. Rogers requested review of the ALJ's decision from the Appeals Council (R. 43-44), and the Appeals Council denied the request on August 28, 2014 (R. 1-4). At that time, the denial of benefits became the final decision of the Commissioner.

B. *Regulatory Standards*

In order to receive disability benefits under the Social Security Act, a claimant must have been disabled during an insured period. 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989). For a person to be "disabled" under the Social Security Act, he or she must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be

---

[2] Citations in the form "R. _" refer to the pages of the administrative record.

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate her disability by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence that the Commissioner may require. 42 U.S.C. § 423(d)(5)(A).

An ALJ must use a sequential five-step analysis for determining whether a claimant is disabled under the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). First, the claimant must not be "engaged in substantial gainful activity." Second, the ALJ considers whether the claimant has a "severe" impairment that significantly limits his or her ability to do basic work activities. If the impairment is severe, the ALJ will decide if the claimant is disabled by first considering whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. 20 C.F.R. pt. 404, subpt. P, app. 1. If the impairment is listed, the claimant is deemed disabled. If it is not listed (or not medically equal in severity to a listed impairment), ALJ will make a finding about the claimant's "residual functional capacity" ("RFC") in step four and, if necessary, step five. 20 C.F.R. § 404.1520(e).

At step four, the ALJ will decide whether, despite the claimant's impairment or impairments, she has the residual functional capacity to perform her "past relevant work." 20 C.F.R. § 404.1520(e). If she does, she is not disabled. If she is not able to perform her past work, the ALJ determines at step five whether there is other work that the claimant could perform. 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of proof in the first four steps, and the burden shifts to the Commissioner in the last step. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations," *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004), or "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal quotations omitted). If the record establishes "persuasive proof of disability and remand for further evidentiary proceedings would serve no purpose," the court should remand solely for the calculation and payment of benefits. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (citation omitted).

C. *The ALJ's Decision*

The ALJ found that the time period in question was June 25, 2010, Rogers's alleged onset date, through September 30, 2013, the date Rogers was last insured. R. 50. Rogers did not engage in substantial gainful activity during that period. R. 50. Next, the ALJ determined that Rogers suffered from the following severe combination of impairments: cardiac impairment, with a history of coronary artery disease with stent placement and ischemia, as well as pulmonary hypertension; obesity; arthritis, including degenerative changes of the right knee; degenerative disc disease of the lumbar spine; and bilateral trochanteric bursitis.[3] R. 50.

The ALJ also found that Rogers suffered from additional impairments that were "not severe on their own and not severe in combination with the other impairments because they do not cause more than minimal limitation in the claimant's ability to perform basic work activities." The additional impairments "reflect a limited extent of care as well as use of routine

---

[3] Trochanteric bursitis is an inflammation on the outside point of the hip that causes hip pain.

medications." R. 51. Those additional impairments were: hyperlipidemia/hypercholesterolemia; hypertension; a history of uterine/bladder prolapse, status post anterior repair; Vitamin D deficiency; a history of obesity; a visual impairment; and gastroesophageal reflux disease ("GERD"). R. 50-51.

The ALJ then determined that none of the impairments, either singly or in combination, met or medically equaled the severity of any of the listed impairments in Appendix 1 of the applicable regulations. R. 51. He specified that there is no evidence of Rogers's inability to ambulate effectively or perform fine and gross movements effectively; no evidence of nerve root compression; and no evidence of spinal arachnoiditis. He also said that Rogers's cardiovascular impairment is not severe under the regulations. R. 51. Then, at step four, the ALJ found that Rogers had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that Rogers was limited to: lifting/carrying and pushing/pulling 20 pounds occasionally and ten pounds frequently; sitting for six hours in an eight-hour period, and standing/walking for six hours in an eight-hour workday; and occasional climbing, balancing, stooping, kneeling, crouching, and crawling. R. 51.

As part of his RFC determination, the ALJ had to assess Rogers's credibility, using a prescribed, two-step process.[4] At the first step, the ALJ found that medical evidence in the record revealed conditions that could be expected to cause Rogers's symptoms, which included difficulties with sleeping, heavy lifting, and prolonged sitting, standing, or walking; needing help with household chores; and aches in her chest, back, hip, shoulder, hands, and stomach. R. 52. At the second part of the credibility determination, the ALJ found that Rogers's

---

[4] "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). At the second step, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)) (alteration added).

statements about the intensity, persistence, and limiting effects of the symptoms were not credible. R. 54.

The ALJ summarized Rogers's hearing testimony about her symptoms, where she said that she could not sit or stand for longer than 15 minutes and could not do cooking, cleaning, laundry, or shopping because of her pain. R. 53. He also noted Rogers's hearing testimony that she went out only to go to the doctor, and that her husband usually drove her because of the pain. She also testified she gets tired after she uses the computer. R. 53. Additionally, Rogers complained of daily low back pain, bilateral knee pain, high blood pressure, and difficulty with breathing and fatigue from heart disease. R. 53. Rogers also said she had a stomach problem that improved over time. Finally, she testified that she had bladder surgery and has had to use the bathroom twice an hour since 2012. R. 53.

In assessing Rogers's credibility, the ALJ said he considered Rogers's work history favorably, but he called Rogers's cardiac treatment "routine" and the treatment for her hip and back "conservative." R. 54. He also noted the contrast between Rogers's hearing testimony and the statements she made in her function report to the effect that she had no trouble with personal care, could cook, drive, and use public transportation, and went outside twice a day in nice weather. R. 52.

The ALJ next gave a detailed summary of the relevant medical evidence and opinions of both the treating and consulting physicians who weighed in on Rogers's case. *See* R. 54-61. In assessing the evidence, he gave limited weight to the opinions of the treating physicians and accorded greater weight to those of the consulting physicians. He discussed Dr. Thresiamma Mathew's opinion, who treated Rogers for her back and knee pain, and said that even though Mathew was a treating physician, her opinion was given "limited weight" because

the period of care was fairly short and Mathew's opinion about Rogers's limitations was not supported by the extent of the care, which mostly consisted of physical therapy. R. 60. Mathew's opinion included a statement that Rogers could sit for only four hours and stand/walk for only up to one hour in an eight-hour workday. R. 60. Mathew also stated that Rogers needed breaks from sitting for 20 minutes every hour. R. 60. The ALJ also found that the opinions of Isabel Herrera-Klarberg, a physician's assistant, and Dr. Sanjiv Bakshi, a treating cardiologist, were not supported by the underlying records and inconsistent with Rogers's work history and activities of daily living. R. 60.[5] Bakshi and Herrera-Klarberg opined that Rogers could sit for only two hours and stand/walk for only two hours in an eight-hour workday. They said Rogers could lift five pounds frequently. R. 60.

In contrast, the ALJ gave "considerable" weight to consulting physician Dr. Joyce Graber's opinion, which said that Rogers only had to avoid activities that required moderate or great exertion. R. 61. Finally, the ALJ gave "significant weight" to the opinion of Dr. Shanker Gupta, the state agency medical consultant, that Rogers could perform light work with occasional postural limitations and had no other limitations. R. 61. Based on these opinions, the ALJ said Rogers could perform light work with additional postural restrictions. R. 61. Because of his conclusion that Rogers was capable of light work and the vocational expert's testimony classifying Rogers's past work as sedentary (*see* R. 106-08), the ALJ said that Rogers could perform her past jobs as data entry clerk and receptionist, which required only sedentary levels of exertion. R. 61. The ALJ said that Rogers's past sedentary work involved standing/walking of no more than two hours in an eight-hour workday. R. 62.

---

[5] Because she is a physician's assistant, Herrera-Klarberg's opinion is not entitled to the deference owed to a treating physician. *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008).

DISCUSSION

In her motion for judgment on the pleadings, the Commissioner argues that the ALJ's decision was correct because (1) substantial evidence supports the ALJ's RFC finding that Rogers was capable of her past relevant sedentary work, and (2) the new evidence Rogers submitted to the Appeals Council did not provide a basis to alter the ALJ's decision. In Rogers's cross-motion, she argues that (1) the ALJ did not properly weigh the medical evidence, and (2) the ALJ did not properly evaluate Rogers's credibility.

A. *Standard of Review*

Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether the correct legal standards were applied and whether ALJ's findings are supported by substantial evidence. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also id.* ("Substantial evidence is more than a mere scintilla.") (internal quotations omitted). A hearing on disability benefits is a nonadversarial proceeding, and the ALJ "has an affirmative obligation to develop the administrative record." *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) (citation omitted).

B. *The Treating Physician Rule*

Rogers asserts that the ALJ erred in according the opinions of his treating physicians, Dr. Thresiamma Mathew and Dr. Sanjiv Bakshi "little weight." The Commissioner asserts that the ALJ's decision in this regard was supported by substantial evidence. I agree with Rogers and conclude that the ALJ's decision to accord greater weight to the consulting physicians than to the treating physicians was not supported by substantial evidence.

1.   *The Legal Standard*

The Social Security Act requires deference to the physician who has engaged in the primary treatment of the claimant. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Under the regulations, a treating physician's opinion about the nature and severity of a claimant's impairments is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (upholding these regulations). An ALJ must set forth "good reasons" for refusing to accord the opinions of a treating physician controlling weight and must consider several factors in this determination, including the frequency and extent of treatment, the underlying evidence in support of the opinion, and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(2); *see also Shaw v. Chater*, 221 F.3d 126, 134–35 (2d Cir. 2000) (noting the Second Circuit's requirement of an "overwhelmingly compelling" critique of a doctor's opinion in order for an ALJ to reject it).

Before refusing to give controlling weight to a treating physician's opinion of a claimant's limitations, an ALJ must first make efforts to ensure there are good reasons to do so. If there are unanswered questions about the physician's opinion, an ALJ should develop the record to fill the gaps before deciding the opinion is not supported by the record. *See Rosa*, 168 F.3d at 79 ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Cleveland v. Apfel*, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) ("When the opinion submitted by a treating physician is not adequately supported by clinical findings, the ALJ must attempt, *sua sponte*, to develop the record further by contacting the treating physician to determine whether the required information is available.").

9

An ALJ is also required to develop the record to resolve any inconsistencies he or she perceives between the treating physician's opinion and the underlying evidence before finding that the opinion should be discounted. *See Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 117-18 (2d Cir. 1998) (holding that the doctor could have explained the "perceived inconsistencies between [his] two reports" had the ALJ developed the record rather than discrediting one of the reports); *Yu v. Astrue*, 963 F. Supp. 2d 201, 215 (E.D.N.Y. 2013) (ALJ should not have selectively relied on inconsistent evidence from treating physician in order to reject physician's opinion).

2. *Dr. Thresiamma Mathew*

Dr. Thresiamma Mathew started seeing Rogers in November 2012. Rogers complained of lower back pain with radiating pain to the left calf and said the pain had been going on for several years; she reported being able to walk three blocks. R. 502. After a physical examination, Mathew diagnosed Rogers with lower back pain, degenerative joint disease of the lumbar spine, and bilateral trochanteric bursitis. R. 503. Mathew prescribed physical therapy, Tylenol, and a back brace. R. 503.

At a subsequent examination in December 2012, Mathew noted that Rogers was generally the same and was awaiting physical therapy. R. 496. In April 2013, Mathew noted that Rogers reported moderate relief from her pain from the physical therapy. Mathew planned to discontinue physical therapy and said that she would consider an injection to Rogers's left hip if the pain persisted. R. 428. In notes from a subsequent examination in July 2013, Rogers had similar complaints about her pain. Mathew gave the same diagnosis as in her initial examination. R. 387. Mathew noted that Rogers's pain was resolving with physical therapy and she discharged Rogers from the clinic. R. 386.

10

Mathew completed a Multiple Impairment Questionnaire on July 10, 2013. R. 365-72. In it, Mathew opined that Rogers could sit for four hours and stand or walk for up to one hour in an eight-hour workday. R. 367. Mathew also thought Rogers could lift up to ten pounds occasionally and up to five pounds frequently. R. 368. Mathew said that Rogers would need breaks from sitting every 20 minutes. R. 367. She opined that Rogers would not be able to do a full-time job that requires activity on a sustained basis. R. 370. Finally, she said that Rogers's symptoms started as early as 2009. R. 371.

Even though Mathew was a treating physician, the ALJ accorded the opinion "limited weight" because he found that Mathew's period of care was fairly short and his opinion about Rogers's limitations was not supported by the extent of care, which mostly consisted of physical therapy. R. 60. The ALJ called Mathew's statements that Rogers could "sit continuously" and that she needed breaks from sitting every hour "contradictory." R. 60. The ALJ also said Mathew's opinion is "at odds with the claimant's activities of daily living, which have included some driving and use of public transportation." R. 60.

The ALJ's reasons for discounting Mathew's opinion lack adequate support in the record. First, Rogers testified that she saw Dr. Michael Richter for her knee pain until 2010, when she started seeing Mathew for both back and knee pain. R. 92-93. Before discounting Mathew's opinion, the ALJ should have first sought out support for that opinion in the notes of prior treatment from Richter, or stated that he could not find adequate support in those notes. The ALJ noted that there was no evidence of "positive straight leg testing" in support of his conclusion that Rogers's impairments were not severe, but, as Rogers points out, there is evidence of a positive straight leg test result in Richter's treatment notes. R. 747. In addition, the ALJ should have developed the record to include an RFC from Richter if before discounting

11

Mathew's opinion based on the length of treatment. *See Lawler v. Astrue*, No. 10-CV-3397 (ARR), 2011 WL 5825781, at *7 (E.D.N.Y. Nov. 14, 2011) ("An ALJ's affirmative obligation to develop the record also includes the obligation to contact a claimant's treating physicians and obtain their opinions regarding the claimant's residual functional capacity.").

As for the ALJ's finding that Mathew's opinion was contradictory regarding Rogers's ability to sit, he should have developed the record in an effort to resolve the inconsistency. *See Clark*, 143 F.3d at 117-18. As a matter of common sense, I do not find it contradictory to say that someone has the ability to sit continuously for four hours as long as they are given 20-minute breaks each hour. The ALJ apparently concluded otherwise, but before acting on that conclusion he should have given Mathew an opportunity to explain.

Finally, I disagree with the ALJ's opinion that Mathew's RFC assessment is inconsistent with Rogers's activities of daily living. That Rogers is sometimes able to go out or drive herself to a doctor's appointment is not inconsistent with the claim that she experiences significant pain. I also see no reason to doubt Mathew's opinion that Rogers's symptoms have lasted since 2009, since that opinion is based on Rogers's statement to her and not inconsistent with the medical evidence presented. For these reasons, I remand for further development of the record in advance of reconsideration of Mathew's opinion.

3. *Physician's Assistant Herrera-Klarberg and Dr. Bakshi*

In July 2013, Isabel Herrera-Klarberg, a physician's assistant, and Dr. Sanjiv Bakshi, a treating cardiologist, examined Rogers and completed a "Cardiac Impairment Questionnaire" where they opined that Rogers could sit for only two hours and stand/walk for only two hours in an eight-hour workday. R. 376. They said Rogers could lift up to five pounds frequently. R. 377. They noted they had treated Rogers every three months from February 2012

to July 2013.  R. 374.  Their diagnosis was shortness of breath on exertion after three blocks, New York Heart Association classification II,[6] coronary artery disease with status-post stent implant in 2001, and hypertension.  R. 374.

        The ALJ found that the opinion of Herrera-Klarberg and Bakshi was not supported by the underlying records and inconsistent with Rogers's work history and activities of daily living.  R. 60.  Specifically, the ALJ said the opinion was inconsistent with the evidence that showed Rogers's cardiac examinations were "generally normal," and that her condition was "controlled with medication."  R. 60.  He found that Herrera-Klarberg and Bakshi's opinion that Rogers has had these limitations since 2001 was consistent with the medical evidence in the case and the NYHA classification II, but inconsistent with their opinions on Rogers's limitations.  R. 60.

        The ALJ did not ask for more information from Herrera-Klarberg or Bakshi regarding the inconsistencies he perceived between their assessment of Rogers's limitations and either the NYHA classification or the fact that Rogers has had the limitations since 2001.  I conclude that the ALJ did not properly develop the record in this regard, and therefore substantial evidence does not support the discounting the opinion of the treating physician.  *See Rosa*, 168 F.3d at 79; *McGowan v. Astrue*, No. 07-CV-2252 (DLI)(SMG), 2009 WL 792083, at *8 (E.D.N.Y. Mar. 23, 2009) (ALJ failed to ask for more information regarding perceived inconsistency in treating physician's opinion and NYHA classification).

        To the extent that the ALJ developed the record by allowing Rogers additional time to provide records from Dr. Steven J. Siskind, a treating cardiologist (*see* R. 109), those

---

[6]    As noted by the Commissioner, a New York Heart Association Classification II means that the patient has "slight limitation in physical activity" and "[o]rdinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain."  *See* http://my.americanheart.org (citing The Criteria Committee of the New York Heart Association, *Nomenclature and Criteria for Diagnosis of Diseases of the Heart and Great Vessels*, 253-56 (9th ed. 1994)) (cited in Def. Br. at 19 n.4).

records support Bakshi's assessment. They include a stress test conducted at NYU in December 2013 that showed Rogers was able to stay on the treadmill for only 4:39 minutes (the test noted that the average range for a 63-year-old female starts at 5:05 minutes) and Siskind found that Rogers's "functional capacity is poor."[7] R. 797.

On remand, the ALJ may still conclude that Bakshi's opinion should not be entitled to controlling weight. But he should not do so without consideration of the evidence from Siskind and without further developing the record to resolve the inconsistencies discussed above.

    4.    *Consulting Physicians Graber and Gupta*

The ALJ gave "considerable" weight to the opinion of consulting physician Dr. Joyce Graber, who said that Rogers had to avoid activities that required moderate or great exertion. R. 61. He also gave "significant weight" to the opinion of Dr. Shanker Gupta, the state agency medical consultant, who opined that Rogers could perform light work with occasional postural limitations and had no other limitations. R. 61. Based on these opinions, the ALJ said Rogers could perform light work. R. 61.

As explained above, before the ALJ accorded "significant" weight to the consulting physicians, he had a duty to further develop the record from Rogers's treating physicians. *See Cleveland*, 99 F. Supp. 2d at 380. Specifically, the ALJ's decision to accord Graber's opinion "significant weight" even though he called the opinion "somewhat vague" is insufficient to explain his decision to value Graber's opinion over the treating physicians'

---

[7] The stress test, by itself, does not constitute sufficient evidence of Rogers's functional capacity. *See McGowan*, 2009 WL, at *9 ("The Second Circuit warned of the unreliability of treadmill stress tests, emphasizing that it 'results in misdiagnosis of ischemic heart disease on more than one third of the occasions.'") (quoting *State of New York v. Sullivan*, 906 F.2d 910, 914 (2d Cir. 1990)).

opinions. In addition, Gupta's opinion was rendered on January 23, 2013, which was months before Dr. Mathew's opinion on July 10, 2013. *See* R. 322. The ALJ should also consider the timing of Gupta's opinion on remand.

If the ALJ comes to the same conclusion on remand, he should provide more explanation for that decision. *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) ("[I]n evaluating a claimant's disability, a consulting physician's opinions or report should be given limited weight."); *Pogozelski v. Barnhart*, No. 03-CV-2914 (JG), 2004 WL 1146059, at *13 (E.D.N.Y. May 19, 2004) (concluding that ALJ erred in according "more than limited weight" to opinion of physician who had examined the claimant on only one occasion).

Finally, instead of placing more weight on the consulting physicians' reports, the ALJ could have sought out opinion evidence from treating physicians Siskind and Richter. As explained above, Siskind's records include a stress test where the doctor assessed Rogers's functional capacity as "poor." R. 797. In treatment notes from Richter, Rogers reports fatigue and shortness of breath upon exertion, lower back pain, and decreased range of motion in the lower extremities. R. 742-45. Richter's diagnoses included back pain, hypertension, cholesterolemia, coronary artery disease, vitamin D deficiency, and sciatica. R. 745. Moreover, Rogers testified that her last treatment for her knee pain came from Richter. R. 93. Finally, because Richter started seeing Rogers in January 2010 (earlier than the other treating physicians), he may have been in a better position to assess for how long Rogers's symptoms persisted.

The ALJ's obligation to develop the record included the requirement of obtaining opinions regarding Rogers's RFC from all of her treating physicians. *See Lawler*, 2011 WL, at *7. On remand, the ALJ should develop the record to obtain these additional RFCs before according the opinions of the consulting physicians greater weight than those of the treating physicians. Before deciding to put great weight on Graber's opinion on remand, the ALJ must develop the record to ensure that Graber's opinion is no longer "vague."

      C.     *The Adverse Credibility Finding*

The parties also disagree about the ALJ's finding that Rogers's testimony lacked credibility. Rogers argues that the ALJ erred when he used her testimony about her daily activities and statement that she missed doses of her medications as part of his finding that her testimony was not credible.

As mentioned above, the regulations provide a two-step process for assessing a claimant's assertions of pain. *See Genier*, 606 F.3d at 49. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Next, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)-(b)) (alteration added).

Seven factors are used in evaluating a claimant's subjective complaints. Those include, *inter alia*, the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; and the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii) (setting forth these factors); *see also Ligon v. Astrue*, No. 11-CV-0162

(JG), 2012 WL 6005771, at *17 (E.D.N.Y. Dec. 3, 2012). If the ALJ decides a claimant's testimony is not credible, the ALJ must set forth the reasons "with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988).

Here, the ALJ here found that Rogers's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." R. 54. The ALJ noted that he considered Rogers's long work history favorably, but he said that her cardiac treatment has been "routine," with "limited active findings," her back and hip conditions were treated "conservatively," and she experienced some improvement from those treatments. R. 54. The ALJ noted that Rogers's complaints to her doctors recorded back and chest pain only "on and off" and elevated blood pressure at home. R. 54. He further noted that Rogers, at times, did not take her medications correctly. R. 54. He found that Rogers's complaints of feet and hand swelling were not documented in the medical evidence, nor were her complaints about side effects of her medicines for nausea and headaches. R. 54. Regarding the non-medical evidence, the ALJ found that the record reflected that Rogers's "activities of daily living are intact," although he noted that Rogers testified to doing no cleaning, cooking, or laundry at the hearing. R. 54. He said that in Rogers's function report, she reported cooking twice per week and doing some cleaning and laundry, and that she drives, uses public transportation, and goes to church. R. 54 (citing R. 314).

I conclude that the ALJ's findings with respect to Rogers's credibility were not supported by substantial evidence. First, although the ALJ noted that Rogers's complaints of feet and hand swelling were not documented in the medical evidence, on the next page of his

17

opinion he noted Rogers making that very complaint.  *See* R. 55 (citing R. 296).  Second, in finding that Rogers's testimony was inconsistent with her statements in the function report, the ALJ did not consider the possibility that Rogers's symptoms got worse in the year between the completion of the function report (October 2012) and the hearing (December 2013).  Third, the ALJ failed to develop the record with respect to his finding that Rogers, at times, did not take her medications correctly.  *See* R. 54.  Indeed, the medical evidence from Dr. Richter shows that Rogers was unable to take medication for two weeks at one point because of a change in Rogers's insurance.  R. 746.  On remand, the ALJ should further develop the record with respect to these perceived inconsistencies, including by giving Rogers an opportunity to explain them, before coming to the conclusion that Rogers's testimony was not credible.

Finally, I agree with Rogers's argument that the ALJ failed to explain how Rogers's testimony about her activities of daily living contradict any of the allegations that she is unable to work in a full-time job.  *See* Pl. Br. at 23.  Indeed, an ability to perform the "mundane tasks of life" does not necessarily indicate that a claimant is "able to perform a full day of sedentary work."  *See Martin v. Astrue*, No. 07-CV-3911 (LAP), 2009 WL 2356118, at *12 (S.D.N.Y. July 30, 2009); *see also Brown v. Comm'r of Soc. Sec.*, No. 06-CV-3174 (ENV)(MDG), 2011 WL 1004696, at *5 (E.D.N.Y. Mar. 18, 2011) ("It is well-settled law in this Circuit that [the basic activities of daily living] do[] not . . . contradict a claim of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves.") (internal quotations omitted).

On remand, the ALJ should develop the record as necessary to make a proper credibility determination in light of these principles, and to make clear how the nature of Rogers's daily activities undermines her credibility.  *See McClaney v. Astrue*, No. 10-CV-5421

(JG)(JO), 2012 WL 3777413, at *12 (E.D.N.Y. Aug. 10, 2012) (also remanding on this basis); *see also Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) ("[W]here credibility determinations and inference drawing is required of the ALJ .... [the court should] not hesitate to remand the case for further findings or a clearer explanation for the decision.").[8]

## CONCLUSION

For the reasons explained above, Rogers's motion for judgment on the pleadings is granted and the Commissioner's motion is denied. The case is remanded to the Commissioner for proceedings consistent with this decision.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 9, 2015
      Brooklyn, New York

---

[8] Although I would not remand the case solely on this basis, on remand, the ALJ is also directed to consider the additional evidence from plaintiff that the Appeals Council did not consider (R. 9-32). *See Marchetti v. Colvin*, No. 13-CV-02581 (KAM), 2014 WL 7359158, at *14 (E.D.N.Y. Dec. 24, 2014) (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)) (evidence of the severity of a claimant's condition may demonstrate that condition was far more serious than previously thought). It appears that the ALJ considered some of this evidence already. *See* R. 59;
.

19